E. T. O'Neill and C. J. O'Neill, Co-partners, Trading as O'Neill Brothers, Appellees, v. Edith Reaman and William A. Reaman, Appellants.

Gen. No. 10,276.

328

Opinion filed October 14, 1948.   Released for publication November 2, 1948.

T. R. JOHNSTON and MITCHELL BERNICK, both of Kankakee, for appellants.

ARMEN R. BLANKE and DYER & DYER, all of Kankakee, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.
This case comes to this court on appeal from a judgment entered by the circuit court of Kankakee county

against the defendants, Edith Reaman and William A. Reaman for the sum of $2,647.22 and in favor of the plaintiffs, E. T. O'Neill and C. J. O'Neill, co-partners, doing business as O'Neill Brothers.

On November 16, 1943, the plaintiffs filed a complaint in the circuit court of Kankakee county, Illinois alleging that the plaintiffs had sold to the defendants certain items of farm machinery and repairs over a period of years; that on February 22, 1937, the parties had examined the claims and settled their accounts and agreed upon an amount due to the plaintiffs in the sum of $1,722.70, which amount the defendants had agreed to pay, but had failed to do so. Subsequently defendants filed their answer denying the allegations of said complaint and set up as an affirmative defense the five year statute of limitations. No reply was filed to this answer. The cause was heard by the court without a jury, resulting in a judgment in favor of the plaintiffs and against the defendants for $2,647.22 and it is to reverse this judgment that defendants prosecute this appeal.

The evidence discloses that for 30 or 35 years prior to 1943, plaintiffs were engaged in farming and in selling farm implements and machinery; that since 1918 they had sold defendants machinery, filled their silo, threshed and performed other services for the defendants. The defendants are husband and wife, were married in 1909 and are and always have been farmers. In 1919, the husband purchased a farm upon which the parties lived until 1936, at which time they moved back to the premises upon which they had lived from 1910 to 1919. The farm they lived on from 1919 to 1936 was lost through foreclosure proceedings and in 1935, both defendants were adjudicated bankrupts. Mrs. Reaman testified that at that time she was not indebted to plaintiffs but that her husband owed them not to exceed $50. Neither of the defendants scheduled the plaintiffs as creditors in their bankruptcy proceedings.

E. T. O'Neill, one of the plaintiffs, testified that previous to February 22, 1937, he had sent the defendants statements of the amount due and on that day he made an original and a carbon copy of plaintiffs' account with the defendants as it appeared on their ledger. The carbon copy of this account was offered and admitted in evidence and photostatic copies are found in the record and abstract. As we decipher it, it is as follows, *viz:*

Feb. 22nd, 1937

Mr. & Mrs. W. A. Reaman
Grant Park, Ill.

1931

| | | | |
|---|---|---|---|
| Dec. 14 | Acc. brot forward...........$1199.21 | | |
| Dec. 19, | 1930 By 1–600 x 20–10 Ply truck tire ............. | 48.00 | |
| | 1–Bale of Twine for corn picker ................ | 5.75 | |
| | 2 Roll Barb Wire......... | 9.00 | |
| | 1 Bu. wheat............. | 1.50 | |
| | ½ Frt. on wheat........ | 6.50 | |
| July & Aug. 1931 By thrash. acc. 12/16/31 ............... | | | 55.48 |
| Sept. 10–31 Corn Picker Parts....... | | 1.80 | |
| Nov. 5–31 | By costs on law suit at Manteno, Ill. Christian acct for Mr. and Mrs. Wm. Reaman which they were to pay for.. | 7.50 | |
| | Our time lost one day–2 parties .............. | 4.00 | |
| 1932 | | | |
| Aug. 19–32 By thrashing wheat 849 bu. @ 3¢ per bu. & 68 bu. barley @ 2¢....... | | 26.83 | |
| Aug. 5 | 100 gal. gas for thrashing. | 16.00 | |
| July 19 | Oats thrashed 1440 bu. @ 1½¢ ................. | 21.60 | |

| | | |
|---|---|---|
| Sept. 25 | By 1 Westinghouse repair for light plant, 1 coil, 1 burr, 1 con. rod, 3 points, pp. c.o.d........ | 9.90 |
| 1933 | By repair Mag. etc. Samson engine... | 7.00 |
| July 24 | By thrashing 687 bu. wheat @ 5¢ ............... | 34.35 |
| | By thrashing 342 bu. wheat @ 5¢ ............... | 17.10 |
| | By thrashing oats 1080 bu. @ 2¢ ................ | 22.96 |
| Oct. 21–33 | By credit by Mary G. Lauffer on 1933 thrashing acct ................. | 77.41 |
| Oct. 21 | Received from Geo. Lauffer to be credited on open account ............. | 159.03 |
| 1933 | Account carried forward | |
| 4–1–32 | By cash to apply on pasture rent 1931........ | 20.00 |
| 9–24–28 | By part freight on wheat 9/21/28 ............. | 5.88 |
| 4–20–28 | 109# timothy seed @ 4¢ per lb ............... | 4.36 |
| | 1 bu. clover seed 60#.... | 18.00 |
| | By 1 binder cover canvas. | 15.00 |
| 1928 | By 1 new 600 x 20–10 ply truck tire............ | 48.00 |
| | By 1 new 600 x 20 tube.. | 5.00 |

This tire was borrowed and put on your rim for your truck. 4 ruined, had to buy a new one and charged to you which was agreeable by both parties

| | | | |
|---|---|---|---|
| 1–1934–35 | Belle Morgan's colt...... | 15.00 | |
| 1–1935–36 | Belle Morgan's colt...... | 15.00 | |
| | By interest on $1200.00 1930–33 at 7% as was agreed by both parties.. | 252.00 | |
| 6–1–35 | By soybeans 3075 . . . . 50 bu. & 45#............: | 50.00 | |
| | 300# cane seed @ 5¢.... | 15.00 | |
| 1936 | | | |
| 11–30–36 | By check on plowing..... | | 36.00 |
| 1936 Balance due on tractor sale..... | | 35.85 | |
| 1935 By C. J. making trip to Danville, Ill. to collect for cattle killed in truck..10.00 | | | |

$2090.82/347.92/$1722.90

Mr. O'Neill further testified that he mailed to appellants the original copy of the ledger statement and on the Sunday following the 22nd day of February 1937, he, accompanied by Charles O'Neill, Louis Reuter and Art Gardner went to the home of appellants on the south side of the highway; that he had the carbon copy of the statement which he had theretofore mailed the defendants and they had the original; that appellees, appellants and Messrs. Gardner and Reuter sat down at a table in the dining-room of appellants' home. As abstracted he then testified: "We went over the account and they argued that something had been paid. They finally, after some talk, both said they would take care of the account. They said the account was correct. . . . In the beginning they objected to some of the statements. They thought they had paid some of them. The way that I had it is the way that it stayed. I told them before I left that if they found anything that we had not given them credit for or had not charged that they should let us know and we would make it right. They said they would pay it as soon as they could. That seemed to be the only answer I could get from them when I went out to collect." As a reason for not attempting to collect the

amount due on this account sooner this witness stated he knew the defendants went through bankruptcy and had lost their farm.

Louis W. Reuter testified that in February 1937, he went to appellants' farm on highway seventeen on the south side of the road, and "When we got there we had the account and went over it. As I remember it there were things they just didn't like on it, but the final outcome was that they said they would pay it and it was all right. . . . Mr. Reaman did not say anything."

Arthur Gardner testified that he was present in February 1937, at the home of appellants on the south side of the road on Route 17 when there was a discussion of this account; that he was there again in 1939, with Mary Mitchell, the daughter of one of appellees; that Mary had the statement from appellees' ledger with her and showed it to appellants and "they said they had one like it. She opened it up and they took it and they told us they didn't have the money right then but they would have some and they would settle. I am positive about that. In 1937 this statement was there. They were talking about doing some changing in the statement."

Mary Mitchell testified that she graduated from high school in 1940 and was the daughter of Charles O'Neill and had occasion to go to appellants' home several times; that the last time was in December 1939. "I had a copy of the statement we had sent them. Mrs. Reaman had a document also. I asked them about the open account and both said they couldn't pay anything at that time but they would pay some and for us to tell my uncle not to worry about it. They were referring to my father, Charles. They did not examine the document at that time. I had it in my hand and she said that she had one like it."

Mrs. Reaman testified that in February 1937, she and her husband lived north of Route 17, at the same place they were living at the time of the trial; that her hus-

band had a nervous breakdown in 1935 and since that date had been ill and not able to talk or transact business. That since 1935 she served chicken dinners on week-ends and holidays to help support herself and husband, that she never received a statement such as plaintiffs' offered in evidence and that the first time she ever saw it was at the trial. She denied that Mr. Gardner and Mary Mitchell were ever at her place in 1939 and that she ever acknowledged to them or to appellees that she owed appellees any money. Charles O'Neill did not testify. His brother testified that he was sick. Neither did Mr. Reaman, except he was called by plaintiffs under section sixty of the Practice Act [Ill. Rev. Stat. 1947, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060] and was asked whether he received a letter dated December 12, 1939, signed by E. T. O'Neill.

Appellees are seeking to recover in this case upon an account stated and their counsel rely upon the foregoing evidence as to what took place at the home of appellants in February 1937, to establish the fact that at that time $1,722.90 was due them and that appellants unequivocably promised to pay them that sum of money. This promise, if made, was six years and almost nine months before this suit was commenced. In order to take the case out of the five year statute of limitations appellees rely upon the testimony of the daughter of one of appellees, Mary Mitchell and Arthur Gardner who testified they visited appellants' home in December 1939. Their testimony is far from satisfactory. According to Gardner, the defendants said they didn't have any money right then, that they were talking about doing some changing in the statement but she (Mrs. Reaman) said that they would have some money sometime and would settle. Mary Mitchell said that the defendants said they couldn't pay anything at that time but would pay some time and for her father not to worry. Appellants had both

gone through bankruptcy in 1935 and appellees knew it. The evidence of appellee, E. T. O'Neill, is that the exhibit which we have set out in this opinion was an exact copy of his book of original entry. It shows that the amount due appellees on December 14, 1931 was $1,199.21. An examination of this instrument shows the entries were not made in chronological order. Entries of an earlier date frequently follow those of a later date. The first entry on this exhibit is dated December 14, 1931, and the balance brought forward is stated to be $1,199.21. The next entry is dated almost a year earlier, December 19, 1930. Following the item dated 4/1/32 is an item dated 9/24/28. No reason is suggested why the original ledger from which this exhibit purports to have been made, was not produced upon the hearing. In our opinion the evidence as to what occurred in February 1937, falls far short of establishing an account stated. At this meeting no one testifies that any amount was ever mentioned by any one. Mr. O'Neill's testimony is that the defendants thought they had paid some of the items and that they said they would pay as soon as they could. More than six years later, the daughter of this creditor, who, a couple of years before had graduated from the high school again went to the Reaman home and it is upon what occurred there that appellees base their right to recover.

In *Keener v. Crull*, 19 Ill. 189, the court in speaking of the effect of the statute of limitations stated that while the debt remained, all remedy for its enforcement was gone but the debt did constitute a moral obligation and that a new promise, based upon such moral obligation, was binding upon the debtor. The court then continued: "The new promise may arise out of such facts as identify the debt, the subject of the promise, with such certainty as will clearly determine its character, fix the amount due and show a present unqualified willingness and intention to pay

it, at the time acted upon and acceded to by the creditor, the promisee, (citing cases). Like any other promise, having legal force and sanction, it must be made to the party seeking its benefits, or to some one authorized to act for him. A promise to a stranger is insufficient to establish a promise to the plaintiff or the party whom he represents.''

In an account stated a definite ascertained sum must be stated to be due. It is an account which has been examined and accepted by the parties. Acceptance by the party to be charged must be shown by the one who relies upon the account. The evidence found in this record does not establish to our satisfaction either that an account was stated by the parties hereto in 1937 or that an unconditional new promise upon the part of appellants was made in 1939, to pay any definite amount to appellees at any definite time. We do not know what items went to make up the amount of $1,199.21 which was on December 14, 1931, brought forward by appellees in their statement of account. This account enumerates truck tires, barbed wire, corn binder parts, threshing bill, gasoline for truck, timothy seed, clover seed, horse collars, breeding fees, soybean seed, plowing and other items connected with farming operations. These were items connected with the business of Mr. Reaman, who was a farmer. Mrs. Reaman's liability therefor could only be based upon the purchase of these items by her or upon her promise to pay the debt of her husband. Mrs. Reaman emphatically denied the statements attributed to her by Mary Mitchell, Arthur Gardner and the other witnesses. We recognize the rule that the findings of the trial court should not be lightly disturbed by an appellate tribunal but in this case, under the evidence found in this record, there is no other alternative.

The judgment appealed from will be reversed and the cause remanded.

*Reversed and remanded.*